W. H. THOMAS & SON CO. v. BARNETT, Surveyor of Customs.

(Circuit Court of Appeals, Sixth Circuit. March 9, 1906.)

No. 1,484.

CUSTOMS DUTIES—CHANGE OF PACKAGES OF GOODS—MERCHANDISE ENTITLED TO DEBENTURE.

In Rev. St. § 3030 [U. S. Comp. St. 1901, p. 1995], giving the importer of any "merchandise entitled to debenture" the right to transfer the same into new packages when necessary for its safety or preservation with the permission of the collector of the port where the same may be, the words "entitled to debenture" apply only to imported goods on which the duties have been paid, and which have been entered for export, and having the benefit of drawback under the preceding sections, are entitled to debenture for such drawback. Such section does not authorize a change of packages of imported merchandise remaining in bond and intended for sale and consumption in this country.

In Error to the Circuit Court of the United States for the Western District of Kentucky.

For opinion below, see 135 Fed. 172.

Augustus E. Willson, for plaintiff in error.

R. D. Hill, U. S. Atty., and M. H. Thatcher, Asst. U. S. Atty., for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge, delivered the opinion of the court.

This case involves the construction of section 3030, of the Revised Statutes [U. S. Comp. St. 1901, p. 1995], and more particularly the meaning of the phrase "merchandise entitled to debenture," used therein.

The plaintiff in error, the owner of 365 (now 162) barrels of whisky, made in Kentucky some 15 years ago and sent abroad, but imported and held in bond, made application, under section 3030 of the Revised Statutes, to the surveyor (acting as collector) of customs at the port of Louisville, Ky., for permission to transfer the whisky from the barrels to bottles or carboys, stating the barrels were old and worn out, that to transfer the old whisky into new barrels would spoil its flavor, and that it was necessary for its safety and preservation to transfer it into bottles or carboys. The duties on the imported liquor had not been paid, and the importer made no pretense that it intended

to export the whisky, but, on the contrary, frankly stated that it was not an exporter, but wished to sell the goods in this country. The surveyor referred this application to the Secretary of the Treasury, who, after taking the advice of the Attorney General, denied the application, and, upon a renewal of the request, again denied it. Then the importer, setting out the facts, brought suit against the surveyor to compel the granting of the permit, and for damages. The suit, instituted in the state court, was removed to the court below, where a demurrer to the petition was sustained.

The section involved reads as follows:

"Sec. 3030. When the owner, importer, consignee, or agent, of any merchandise entitled to debenture, may wish to transfer the same into packages, other than those in which the merchandise was originally imported, the collector of the port where the same may be shall permit the transfer to be made, if necessary for the safety or preservation thereof."

This whisky had been imported, and was being held in a bonded warehouse awaiting withdrawal for consumption. The duties had not been paid, and the merchandise had not been entered for export. Indeed, it is conceded there was no intention to export the whisky. The question is, therefore, whether such merchandise is "merchandise entitled to debenture," within the meaning of the above section. The importer argues it is, because, being still held in bond, and the three years within which it might be exported not having elapsed, the importer might at any time pay the duties and export the whisky, and thus become entitled to a certificate of debenture for the drawback then due it. On the other hand, the court below held that although the whisky might become entitled to debenture, in case the importer paid the duties within the three years and entered it for export, it was not entitled to it now, and would never become entitled to it, if the importer carried out its declared intention of selling the goods in this country.

Section 3030 is found in chapter 9 of title 34 of the Revised Statutes (being sections 3015 to 3057, inclusive), regulating drawback. In this chapter, after providing for a drawback of duties paid on imported merchandise which shall be exported (section 3015), the right to the same is made contingent upon the merchandise being exported in the original casks or packages. Section 3016. No drawback shall be allowed "on merchandise entitled to debenture under existing laws," unless exported within three years from the date of importation. Section 3017. If articles are imported in bulk, they shall be exported in the packages, if any, in which they were landed, and shall not be entitled to drawback unless exported in such packages. Section 3028.

Having thus provided for the preservation of the original packages, with their brands and marks, it is provided that it shall be lawful for the exporter of any liquors in casks to fill up the casks out of other casks included in the same original importation, or into new casks corresponding therewith, to be marked and numbered as original casks, in case the original casks shall, in the opinion of the proper officer, be so injured as to be unfit for exportation, but in no other

case. Such change or transfer must be done under the inspection of an officer appointed by the collector of the port from which the liquors are to be exported. Section 3029.

It is to be observed that the privilege of filling or changing casks is here given only to the importer who intends to export the liquor. It is not given to the importer who has the liquor in bond intending to sell it in this country. The next section, the one in controversy, is in the same line. It provides that when the importer "of merchandise entitled to debenture," may wish to transfer the same into packages other than those in which it was originally imported, the collector may permit the transfer, if necessary for the safety or preservation of the merchandise. Section 3030. The presumption to be drawn from the location of this section in the chapter on drawback, is that its provisions relate to imported merchandise which is entered for export and, therefore, is entitled to drawback. This presumption is strengthened by the succeeding provisions of the chapter, and confirmed by the history of the enactment itself, to which we shall refer later.

Taking up the succeeding provisions. It is provided that all debentures shall be issued and made payable to the original importer of the merchandise entered for exportation, whenever requested in writing by the exporter. The debenture, which is merely a certificate from the collector that a certain amount is due the exporter for drawback, is made payable in 15 days from the time of signing the bond for the delivery of the merchandise at a foreign port. Section 3038. Debentures are assignable (section 3040), and suit may be brought, if payment is refused. Section 3039. If merchandise is exported from a district other than the one in which it was imported, the collector of such district shall grant the importer a certificate of exportation which shall entitle the possessor to receive from the collector of the district where duties were paid, a debenture for the drawback due. Section 3041. A collector may refuse to grant a debenture, whereupon the matter goes to the Secretary of the Treasury. Section 3042. This section further provides:

"In no case, moreover, of the exportation of goods shall a drawback be paid until the duties on the importation shall have been first received."

All these provisions go to strengthen the natural presumption to which we have referred. It is confirmed by a reference to the origin of the provisions contained in section 3030. The drawback provisions to which we have referred are based substantially upon those contained in the tariff act of March 2, 1799, c. 22, 1 Stat. 627, §§ 75 to 80, inclusive, of that act, regulate the allowance and payment of drawback, the last section providing that for all merchandise entitled to drawback, which shall be exported, the exporter shall be entitled to receive from the collector a debenture for the amount of the drawback, to which the merchandise is entitled. The form of the debenture is given. It is clear from these provisions that no merchandise is entitled to debenture unless it is entitled to drawback, for a debenture is merely the certificate of the amount of drawback due; and, of course,

no merchandise is entitled to drawback except that designed for export and upon which the duties have been paid.

There is a provision in this act for the filling or transfer of casks, as in section 3029, but none for the transfer of merchandise entitled to debenture into new packages, as in section 3030. This provision first occurs in the act of March 1, 1823, c. 21, 3 Stat. 729, which, in sections 28 to 34, inclusive, contains a number of provisions relating to drawback. Among them are sections 31 and 32.

Section 31 provides that where goods "entitled to debenture" shall be re-shipped for transportation coastwise before the necessary certificates are issued by the collector of the port where imported, they shall be allowed to be "entered for debenture" at the district to which they shall be so transported, without forfeiting the benefit of drawback.

The next section, 32, contains the provisions now incorporated in sections 3030 and 3031, giving the right to the importer of any merchandise "entitled to debenture" to transfer the same into new packages if necessary for its safety or preservation. It is obvious that the phrase "entitled to debenture" should be given the same meaning in each of these original sections. It means imported goods upon which the duties have been paid or secured to be paid, which have been entered for export and, therefore, having the benefit of drawback, become entitled to debenture.

The main argument of counsel for the importer is that the provisions of section 3030 for a change of packages when necessary for the preservation of the imported goods, are beneficial, and should be construed to extend to all goods held in bond. But, obviously, we cannot by construction extend a measure beyond the intention of Congress. If the privilege was intended for all imported goods held in bond, why did not Congress say so? Why limit it to "merchandise entitled to debenture"? Again, if designed for all bonded merchandise, why were not these provisions included with those grouped in chapter 7, of title 34, relating to "the bond and warehouse system"? The argument is really one for an additional enactment and should be addressed to Congress.

Taking the law as it stands, and answering the argument for a change, it may be said it is not to the interest of the government to make it too easy for importers to hold their goods indefinitely in bond without the payment of duties. The law places a limit upon the time goods can be held in bond, and doubtless it was because of this that these whiskies were sent abroad and then brought back. No real hardship is imposed upon the importer in declining to allow him to change the packages unless he intends to export the goods. He becomes personally liable for the duties when he imports the goods, and by paying the duties, he can at any time take the goods out of bond and change the packages to suit himself.

The judgment of the lower court is affirmed.